ARRUZA *v*. LAUGIER ET AL.

APPEAL from the District Court of San Juan.

No. 70.—Decided January 31, 1908.

EVIDENCE—RULES FOR INTRODUCTION THEREOF—DISCRETION OF THE COURT.—The court has the discretionary power to permit inquiry into a collateral fact when such fact is directly connected with the question in dispute, and is necessary to its proper determination, or when it affects the credibility of a witness. The rules governing the introduction of evidence are applicable so long as the court does not direct some other method to be pursued.

ID.—It is not necessary for either party, in order to introduce evidence, to set out in his pleadings, the complaint or the answer, the purport of the evidence which he proposes to introduce.

ID.—TRIAL—ARGUMENTS OF COUNSEL.—The conduct of a trial and the order in which evidence shall be admitted and arguments shall be made to the court by the respective parties is always to be governed under the general rules prescribed for the conduct of business by the sound discretion of the court, and, unless the court is shown to have been arbitrary or to have abused his discretion, a ruling of this nature will not be revised by the appellate court.

ID.—CREDIBILITY OF WITNESSES.—Although the testimony of one witness is sufficient to prove a fact provided that the judge trying the case believes that the witness told the truth, and although the witness must be presumed to speak the truth, nevertheless the judge has the discretion to consider the manner in which he testifies, and the character of his testimony, and his reputation for truth, honesty and integrity, and his motives, and any evidence which may be contradictory of the statements made by him, the trial judge being in a better position to form judgment as to the credibility of a witness than the appellate court.

OBLIGATIONS—PRINCIPAL—AGENT.—In order that an obligation contracted by an agent may be binding upon his principal, it is necessary that the existence thereof be alleged and proved as also the existence of the agency empowering the agent to contract the obligation.

ID.—DAMAGES AND LOSSES OCCASIONED BY FAILURE TO COMPLY THEREWITH.— Evidence of the existence of damages and losses in an action to recover, for failure to comply with an obligation, is essential in order that judgment may be rendered in favor of the plaintiff.

ID.—FRAUD.—The existence of a conspiracy with intent to defraud must be proved by incontestable facts or at least by a preponderance of the evidence and the existence thereof cannot be left to presumption, suspicion or guess work.

The facts are stated in the opinion.

*Mr. Texidor* for appellant.

*Mr. Acuña* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This action was brought in the District Court of San Juan by the plaintiff, Arruza, against the defendants, Laugier and others, to recover damages for the breach of a contract alleged to have been made between plaintiff and defendants, giving to plaintiff an option to purchase a certain piece of land called "Baradero," situated in the districtof San Juan, and the city of the same name, and in the ward of Puerta de Tierra, at a place called "Islote de San Buenaventura." It appears that the plaintiff was a real estate agent doing business in San Juan, P. R., and he alleges that he obtained a contract of option from the defendants, through their agent, José Claudio, running for 60 days, beginning on the 24th of April, 1906, and ending on the 24th of June of the same year, whereby he had a right to purchase the property for the sum of $40,000, and to make a sale of the same, and that any price which he could obtain in excess of that amount should be his profit, and that if during such period any purchaser should present himself, Arruza should be notified of the fact, and under equal conditions should have the preference in the purchase. Plaintiff further alleges that through his instrumentality and by means of an option which he granted to Ramon Latimer he brought a New York lawyer by the name of Perry Allen to Porto Rico, and introduced him to the owners of the property, and that on the 6th day of June of that year, during the existence of his option, the defendants executed a deed to the San Antonio Docking Co., represented by Allen, for $45,000, whereby the plaintiff became entitled to receive the difference of $5,000 as compensation for his services in the matter.

The plaintiff further alleges that a conspiracy was made between the defendants and Perry Allen by which the sale aforesaid was canceled and on the 8th of June another sale was made by the defendants to the San Antonio Docking Co.

for $40,000, to the prejudice of the plaintiff, and to his damage
in the sum mentioned.

In reply to this complaint the defendants deny that they
ever made any such option or extended the same to Arruza.
or made any contract with him in any other way, and that
although they sold to the San Antonio Docking Co., through
Perry Allen, Esq., on the 6th of June the property known
as "Baradero" for the sum of $44,540, it was only a condi-
tional sale, which was not in any way binding on the pur-
chaser, and that he had a right to accept or reject the same
within a specified time; that afterwards, on an offer being
made to them by the said purchaser of $39,900 they accepted
the same on the 8th of June.  That their agent in the trans-
action was José Claudio, to whom they gave a commission of
1 per cent on the minimum price of $40,000, with the stipula-
tion that the same should be raised to 3 per cent on any
amount which he might obtain over and above the price afore-
said.

On these allegations the parties went to trial, introduced
their evidence, made their arguments, and submitted the mat-
ter to the court, who after summing up the evidence in an
opinion and applying the law as understood by him, gave
judgment in favor of the defendants on the 14th of February,
1907, holding that the law and the facts were against the plain-
tiff, and that he had no right to recover the damages alleged,
and that his complaint should be dismissed, and he be cast in
the costs.

From this judgment the plaintiff took an appeal to this
court on the 6th of March following, within 15 days after the
rendition of the said judgment.   A bill of exceptions was pre-
pared and presented to the district court, and appears in the
record; but all the material facts and points of law involved
in the case may be gathered and understood from the judg-
ment itself, and from the opinion of the court on which it was
based, and from the briefs of counsel presenting the case in

this court. The said briefs are very voluminous and cover all the controverted points.

The first error assigned and presented by the appellant is to the admission in evidence of a cablegram after the evidence of both parties had been heard, and the documentary evidence of the defendants had been exhausted, it being alleged by the appellant that the cablegram did not correspond with any material allegation made by the defendants in their pleadings. In support of this position, and to sustain the point that the court committed a material error in the admission of this cablegram, reference is made to sections 33 and 34 of the Law of Evidence, and to Rule XX of the district court. These sections of the law provide that none but material allegations need be proved, and that evidence must correspond with such allegations, and be relevant to the question in dispute. However, the statute confides to the discretion of the court the right to permit inquiry into a collateral fact when such fact is directly connected with the question in dispute, and is necessary to its proper determination, or when it affects the credibility of a witness. Rule XX of the district court prescribes the order in which testimony shall be introduced on the trial. However, the prescribed order is only obligatory when the court does not direct some other method to be pursued.

The allegations made in the pleadings by the defendants which we have heretofore quoted are sufficient to justify the introduction of the cablegram, because the contents of said cablegrams, which are to the effect that the San Antonio Docking Co., the purchaser, would not pay more than $40,000 for the property offered goes to prove that the defendants, after making a proposition, or a conditional sale to Perry Allen, of the property for $44,540, afterwards accepted $39,900 for the same, and the reasons for the disposition of the property at the lower price. It is not necessary for either party, in order to introduce evidence to set out in his pleadings, the complaint or the answer, the purport of the evidence which

he proposes to introduce. Pleadings should not contain evidence, but only the ultimate facts which the evidence proves. Certainly the reception of the cablegram by Perry Allen and his exhibiting the same to José Claudio, the agent of the defendants, could be considered as a collateral fact directly connected with the question in dispute, and tending to disprove any desire or purpose on the part of the defendants by means of a conspiracy or otherwise, to deprive the plaintiff of the profits which he claimed on the transaction. Thus it was admissible under the sections, quoted from the Law of Evidence, and under the rule of the district court which is claimed to have been violated, and the court had the discretion to change the order of the introduction of evidence, and to receive the cablegram, even after the evidence had been closed. And generally it may be said that the conduct of the trial, and the order in which evidence shall be admitted, and arguments shall be made to the court by the respective parties, is always to be governed under the general rules prescribed for the conduct of business by the sound discretion of the court, and unless the court is shown to have been arbitrary, or to have abused his discretion, a ruling of this nature will not be revised by the appellate court. There was no error in the admission of this cablegram at the time and in the manner in which it was received on the trial of this case, and the ruling of the court in regard to the matter constitutes no reason for a reversal of its judgment.

The appellant further assigns as error alleged to have been committed by the trial court the estimate of the evidence presented on his behalf. It is well to observe that the plaintiff in this case had, throughout the trial, the burden of the proof, and that it was incumbent upon him to prove in the first place that he had the option granted by the defendant to him for the time specified, and that the sale was made at such a price as would give him a profit under the terms of the option, and that afterwards by means of a conspiracy of the purchaser

and the defendant a less price was fixed at such a figure so as to deprive him of the profits to which he was justly entitled.

The plaintiff argues that because it was proved to the satisfaction of the trial court that Juan Arruza on or about the 22d or 23d of April of the year 1906 had knowledge of the fact that the owners of the property known as Baradero were desirous of selling the same, and fixed the price at $40,000, and had in his possession documents which were calculated to facilitate the sale, which documents had been delivered to him by José Claudio, the agent of the defendants, or some of them, and that Mr. Ramon Latimer, who sailed from San Juan for New York on the 24th of April of the year 1906, before sailing had several interviews with the plaintiff in regard to the property, and that the latter delivered to him a writing, giving him an option for a period of 60 days, and the right to buy the property known as Baradero at the price of $45,000, and that Mr. Latimer on arriving at New York had an interview with the members of the New York and Porto Rico Steamship Co., to whom he offered the option which Mr. Arruza had given him, and that from New York City cablegrams were sent to San Juan requesting more definite information concerning the titles of the property, and that on the return of Mr. Latimer and the arrival of Mr. Allen at San Juan, the latter was introduced by the former to Mr. Arruza, and that Mr. Arruza introduced him to the defendants he has made out his case. Plaintiff claims that from all these facts it can be and should be inferred that the plaintiff Arruza had an option from the defendants giving him the right to sell the property within 60 days from the 24th of April, for any sum amounting to $40,000 or over, and that he should have the excess over $40,000 for his services in the matter.

Admitting all the facts detailed by the plaintiff to be true, it does not necessarily follow that he had an option such as he claims and sets out in his complaint. He might very well have had the papers which he describes, and done all the facts

which he claims to have done, and which he may be admitted to have done, and still have been merely an agent, or merely a friend of the parties, or acting with the expectation of being paid a small or a large sum for his services, should the transaction be consummated. And even if the court could have inferred from the circumstances related that Arruza had an option granted to him by José Claudio, on or before the 24th of April, it could not be inferred from such circumstances or facts that José Claudio was authorized by defendants or any of them to extend such an option to Arruza or any other person. As the appellant alleges that he was dealing with an agent, and had obtained his option from the agent, it was incumbent upon him to show the authority of the agent, to make the contract upon which he bases his action and expects to recover a judgment. There is no evidence contained in the record that Claudio had any authority from the defendants or any of them to make any such contract of option or otherwise with Arruza or any other person. There is an expression of one witness, Olivar by name, tending to prove that two of the defendants called at the office of Arruza and ratified the option. Of course, under the provisions of the Law of Evidence, the testimony of one witness is sufficient to prove a fact, provided that the judge trying the case believes that the witness told the truth, and the judge has the discretion, while the witness is presumed to speak the truth, to consider the manner in which he testifies, and the character of his testimony, and his reputation for truth, honesty and integrity, and his motives, and any evidence which may be contradictory of the statements made by him. (See section 2 of the Law of Evidence, Acts of 1905, p. 72.) If the trial judge failed to believe any of the witnesses, this court must consider that his opportunities for forming a correct judgment as to their credibility were better than those possessed by this court. We cannot merely from a perusal of the record form a judgment as to the credibility of a witness which would have the probability of

equal correctness with that formed by the trial court, who had the witnesses before him.

We cannot find anything in the record which would justify us in holding that Claudio had any authority to execute the contract of option which is claimed by the plaintiff. Claudio himself denies it, and the other proof is insufficient to establish it. And it may well be said that even had it been proven that the option had been properly made and ratified, there is nothing in the record to show on what date it commenced to run, nor on what date it ended, and it cannot be inferred from the proof adduced that it continued in existence up to and including the 8th of June, 1906, on which day the sale was made. But even if this had been proven, and the option were held not only to exist, but to continue up to and include the 8th of June—that is to say, the day of the sale—and the defendants had failed to notify Arruza of their determination to accept $40,000, or less, and thereby give him an opportunity to present another purchaser, no evidence has been offered by him, nor does any appear from the record, to show that he was damaged in any sum whatever from such failure on the part of the defendants, or that he had a purchaser who was willing to pay more than was paid by the San Antonio Docking Co., and thereby yield him a profit on the transaction. The amount of damages sustained by him is certainly a material fact to be proven before he could recover a judgment and to fix the amount of the judgment should any be recovered.

In the absence of such proof no judgment whatever can be rendered in his favor, and no evidence whatever is necessary on the part of the defendant to sustain a judgment dismissing the complaint at the cost of the plaintiff.

It is hardly necessary to go into the question of the conspiracy, because there is nothing whatever in the way of evidence to base an inference of such conspiracy upon. A conspiracy involving fraud, as it must necessarily do, should be proven by incontestable facts, or at least by a preponderance

of the evidence, and not left to presumption, suspicion or guesswork. The mere fact that out of three cablegrams introduced in evidence one is in plain words and two in cipher does not show that any conspiracy existed between the receiver of these cablegrams and any other person. There are a dozen explanations which could be given, or which readily suggest themselves to the inquiring mind to account for the fact which is urged to be so suspicious. The evidence does not show that the cipher cablegrams were from the San Antonio Docking Co., and even if it was intended by the San Antonio Docking Co. that the cablegrams sent to its agent, Perry Allen, should be shown to the defendants or any other persons, such a fect would not prove or even induce a suspicion that a conspiracy was entered into between the parties to defraud the plaintiff of a profit on the transaction. When the plaintiff's complaint, and the evidence adduced on the trial, is tested by comparing one with the other, it is readily seen that the allegations and the proofs do not correspond, and that the evidence adduced is not sufficient to support the plaintiff's complaint.

Then looking at this matter from every point of view, there is nothing in the record whatever to show that the trial court committed any material error on the trial of this case, and for these reasons the judgment rendered by said court on the 14th of February, 1907, should be in all things affirmed.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figuéras and Wolf concurred.